UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:17-cr-00044-KJM |
| Plaintiff, | |
| v. | AMENDED[1] ORDER |
| JAMIE RICHARDSON; MICHAEL SNOWDEN-HALL; ROMMEL CIPRIANO; and JAYMAR ROSS, | |
| Defendants. | |

Defendant Jamie Richardson ("Richardson") moves in two separate motions to suppress wiretap evidence. First Mot., ECF No. 84; Second Mot., ECF No. 154. The government withdrew its opposition to the first to the extent it sought the suppression of wire communications, not electronic communications, and opposes the second. Withdrawal of First Opp'n, ECF No. 132; Opp'n, ECF No. 159.[2] Richardson replied. Reply, ECF No. 163.

The court held a hearing on the motions on June 22, 2020. At the hearing, the court requested supplemental briefing. Richardson filed a supplemental brief. Richardson Suppl. Br., ECF No. 171. Co-defendants Rommel Cipriano ("Cipriano"), Michael Snowden-Hall

---

[1] This order deletes the following phrase from page 13, line 3 of the court's order at ECF No. 195: <and the resulting information needs to be suppressed>.

[2] All citations are to the papers following the Second Motion unless otherwise noted.

1

("Snowden-Hall"), and Jaymar Ross ("Ross") (collectively, "joining co-defendants") joined in the motion orally at hearing and also filed supplemental briefing. Cipriano Suppl. Br., ECF No. 172; Snowden-Hall Suppl. Br., ECF No. 173; Ross Joinder, ECF No. 174. The government filed separate supplemental oppositions to Richardson's brief and the joinders. Suppl. Opp'n to Richardson, ECF No. 182; Suppl. Opp'n to Joinders, ECF No. 183.

The court heard further argument on the motions on August 31, 2020. Paul Hemesath appeared for the government. Johnny Griffin appeared for Jamie Richardson; Hayes Gable appeared for Michael Snowden-Hall; Dina Santos appeared for Rommel Cipriano; David Fischer appeared for Jaymar Ross. Having reviewed the arguments of counsel, the papers, and the applicable law, the court GRANTS in part and DENIES in part the first motion and DENIES the second motion.

I. BACKGROUND

a. Factual Background

This case concerns an alleged counterfeit drug manufacturing ring. Defendants are charged with violations of various federal drug trafficking statutes for allegedly producing an array of counterfeit pharmaceuticals and other illegal drugs. *See generally* Compl., ECF No. 1. Significant evidence supporting the charges was obtained from federal wiretaps of defendants' cell phones. Opp'n at 3. The affidavits to obtain the federal wiretaps rely in part on interceptions from a series of wiretaps obtained by California authorities in San Joaquin County (the "San Joaquin Interceptions").

The San Joaquin County District Attorney Tori Verber-Salazar signed 20 of 32 of the state applications for interceptions and extensions thereof. Opp'n at 2. Assistant District Attorney Ron Freitas or Scott Fichtner signed the remaining 12 applications. *Id.* Verber-Salazar signed the final wiretap application. *Id.* None of the 32 applications was signed under oath; rather, the applicants "state[d]" the facts in the application rather than "swear[ing]" or "affirm[ing]." First Mot. to Suppress, ECF No. 84 at 3. However, the parties agree the supporting affidavits of the state investigative officers were sworn.

/////

1. Lockett Interceptions

In the San Joaquin Interceptions, state police officers obtained communications between Terrence Lockett and Mr. Richardson. California authorities intercepted a chain of text messages between Richardson and Lockett in which Richardson instructed Lockett to meet him at a smoke shop. Fed. Wiretap Affidavit ("Fed. Affidavit"), No. 2:16-sw-00754-KJM, ECF No. 1-1 ¶¶ 59–60. Nearly contemporaneously, Lockett had a phone call with another associate, Daryl Walters, summarized as follows:

> WALTERS: "I'm about to come over there…"
>
> LOCKETT: "…he say he probably can't do it today cause he gotta see his P.O…. so he don't want that shit to be in his piss test… he say he can do the other shit for you, but it ain't the same as a Vicodin… cause one's oxycodone and one's hydrocodone… so you use the stuff… probably use 50 percent more…"
>
> WALTERS: "…yeah, but I got the… what's that shit… the U7770… that's what I got… that'll work?"
>
> LOCKETT: "…U4770?... it's a opiate… U47770…447770…"
>
> WALTERS: "Yeah, that's what I got, that shit will work?"
>
> LOCKETT: "…he says he gonna use double the amount because it got a short dilation…"
>
> WALTERS: "…so double the amount on that one…"

Fed. Affidavit ¶ 61.

The wiretap also captured the following text message exchanges between Lockett and Richardson:

> RICHARDSON: "U need another pound of lacto… u can get it off florin smoke shop fo 80buck … n I can do enough fo 4"
>
> RICHARDSON: "4.5"
>
> LOCKETT: "Ok"
>
> RICHARDSON: "When"
>
> LOCKETT: "In a mi in a minute I gotta"
>
> RICHARDSON: "K"
>
> RICHARDSON: "I can knock that out tonight…. if u get it b4 it get late"

3

>LOCKETT: "But you just told me you weren't going to do it cuz you don't know if you going to piss test you tonight"
>
>RICHARDSON: "Mask n gloves"
>
>RICHARDSON: "Late Tomorro fine"
>
>LOCKETT: "Today foshow got the bread"
>
>RICHARDSON: "K..rdy Whn u r"

Affidavit ¶ 62.

### 2. Mose Phone

Agents relied on other portions of the San Joaquin Interceptions to apply for a federal search warrant of the cellular phone of Joseph Mose. On September 15, 2016, Mose was arrested for a probation violation after a traffic stop in Sacramento, California, and was being held in the Sacramento County Jail. Mose Phone Affidavit, No. 2:16-sw-00616-KJM, ECF No. 1 ¶ 40. The DEA applied for and received a warrant to search his phone, in part based on the same San Joaquin Interceptions that captured Lockett and Richardson. The forensic inspection of the phone yielded text messages tending to inculpate Richardson. Fed. Affidavit ¶¶ 65–77. Specifically, on December 28, 2015, Mose received text messages from an individual named "Machell" apparently seeking narcotic tablets. Fed. Affidavit ¶ 68. "Machell" requests 10 "blue," which the affiant officer opines are oxycodone tablets. *Id.* At the same time as Mose exchanged messages with this individual, he text messaged Richardson's number to purchase the same number of "blue polo shirts." *Id.* A similar relay between and among "Machell," Mose and Richardson occurred on March 3, 2016, in which "Machell" requested "25 of them" and two minutes later Mose texted Richardson "25 blue shirts." *Id.* ¶ 70.

Mose and Richardson texted again on March 23, 2016. *Id.* ¶ 72. Mose said "I need another box of shirts," which the officer opines means "a quantity of several hundred narcotic tablets, perhaps five hundred." *Id.* ¶¶ 72–73. Richardson also asked Mose, "Is it too much octane," which the officer opines is a question about the strength of the tablets, indicating Richardson was responsible for controlling their manufacture. *Id.* ¶ 73.

/////

The federal affidavit reviews other inculpatory text messages obtained from the search of Mose's phone, in which Mose contacts Richardson for "shirts" and "blk berri," with the officer opining the latter is a strain of marijuana. The affidavit also sets forth other information tending to show Mose was involved in drug sales with other individuals, with Richardson as a supplier. *Id.* ¶¶ 78–86.

b. Procedural Background

On September 13, 2018, Richardson moved to suppress the fruits of the 32 wiretaps authorized by the San Joaquin County Superior Court on the grounds they violated California law. First Mot. to Suppress. Specifically, Richardson asserted (1) the applications were not made on "personal oath of affirmation" and (2) that some of the wiretap applications had not been signed by the district attorney or a person designated to act as district attorney in her absence, in violation of California Penal Code section 629.50(a). *Id.* at 2–3. As noted above, ten of the 32 applications were signed by assistant district attorneys, rather than the district attorney herself. *Id.* at 8. Richardson asserted all 32 San Joaquin Interceptions must be suppressed. *Id.* at 11.

The government initially opposed the September 2018 motion to suppress, but later withdrew its opposition, at least in part. First Opp'n, ECF No. 90; Withdrawal of First Opp'n, ECF No. 132. In the government's withdrawal of its opposition, it reserved the right to contend the federal wiretaps at issue here would not be suppressible. Withdrawal of First Opp'n at 1–2. Prior to now, the court has not resolved the first motion. In its opposition to the second motion, the government appears to concede the San Joaquin Interceptions should be suppressed. Opp'n at 5 (referring to "the suppressed San Joaquin Interceptions"). In confirming the parties' positions at hearing on the second motion, the court indicated it was inclined to grant the first motion; after initially signaling it would do so by bench order, the court ultimately declined to issue a bench order in light of the parties' dispute about precisely what evidence would be suppressed.

/////

/////

On February 21, 2020, Richardson filed the second motion to suppress federal wiretaps, premised on the government's acquiescence to the suppression of the San Joaquin Interceptions.

## II.     LEGAL STANDARD

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (colloquially known as the Wiretap Act) sets forth the requirements for the government to obtain a wiretap. 18 U.S.C. §§ 2516–2518. Among these are the requirement to demonstrate probable cause that a particular offense has been or will be committed, *United States v. Carey*, 836 F.3d 1092, 1095 (9th Cir. 2016) (citing 18 U.S.C. 2518(1)(b)), and that traditional investigative procedures did not succeed or would be too dangerous or unlikely to succeed if tried, *id.* (citing 18 U.S.C. 2518(1)(c)).

As applicable here, the Wiretap Act provides that state applications for wiretaps must be executed by "[t]he principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application . . . ." 18 U.S.C. § 2516(2). The Wiretap Act sets forth both independently applicable requirements for state-level prosecutors to apply for wiretaps, and a state authorization requirement. *See id.* (requiring grant of applications "in conformity . . . with the applicable State statute . . . ."). The California authorizing statute requires county-level applications for wiretaps to be made "in writing upon the personal oath or affirmation of . . . a district attorney, or the person designated to act as district attorney in the district attorney's absence . . . ." Cal. Pen. Code § 629.50(a). To be a proper applicant, the designee of the district attorney must be designated to act as the principal prosecuting attorney of the political subdivision for all purposes. *United States v. Perez-Valencia*, 727 F.3d 852, 854–55 (9th Cir. 2013).

The Wiretap Act provides an exclusionary remedy for "wire or oral communication[s] . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. The suppression remedy for non-compliant wiretaps provided in the Act is distinct from the judicially created exclusionary rule; it is a creature of statute. *United States v.*

1  *Giordano*, 416 U.S. 505, 524 (1974) ("The issue does not turn on the judicially fashioned
2  exclusionary rule aimed at deterring violations of Fourth Amendment rights, but upon the
3  provisions of Title III[.]").

4        In reviewing the sufficiency of an affidavit in support of a wiretap application, the
5  district court must excise any material tainted by earlier illegalities and see if the untainted
6  remainder of the affidavit would have supported probable cause. *Segura v. United States*,
7  468 U.S. 796, 814 (1984); *United States v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir. 1987); *see*
8  *also United States v. McHale*, 495 F.2d 15, 17 (7th Cir. 1974) (applying excision procedure
9  applicable to search warrant applications to wiretap applications).

10       III.    DISCUSSION
11           a.    First Motion to Suppress
12             1.  Analysis of Merits

13       Not every failure to comply strictly with the statutory requirements of the Wiretap
14 Act warrants suppression. *United States v. Fowlkes*, 804 F.3d 954, 968–69 (9th Cir. 2015).
15 Suppression is required for "failure[s] to satisfy any of those statutory requirements that directly
16 and substantially implement the congressional intention to limit the use of intercept procedures to
17 those situations clearly calling for the employment of this extraordinary investigative device." *Id.*
18 at 969 (quoting *United States v. Donovan*, 429 U.S. 413, 433–34 (1977)). The executive
19 authorization requirement implements the congressional intent that the decision to seek a wiretap
20 be subject to the judgment of executive officials in the relevant prosecutorial subdivision. *Cf.*
21 *Giordano*, 416 U.S. at 527 (noting authorization requirement directly and substantially
22 implements congressional intent that wiretaps be conditioned "upon the judgment of a senior
23 official in the Department of Justice that the situation is one of those warranting their use.").

24       The court agrees that all of the San Joaquin Interceptions must be suppressed.
25 While only twelve of the thirty-two were not subscribed by an appropriate applicant, none of the
26 applications was signed on oath or affirmation as required by California Penal Code section
27 629.50. Thus, Congress's intent that wiretap applications be subject to the circumspection and
28 verification of senior prosecutors is not satisfied. The government "agreed to assume the

7

1    technical deficiencies associated with San Joaquin's wiretaps, and move on to the next phase in

2    the litigation," Opp'n at 5, and clarified at hearing it conceded the wiretaps were illegal.

3            The court indicated it was inclined to grant the first motion at hearing, but as

4    explained above ultimately declined to issue a bench order in light of a dispute about the

5    implications of granting the motion. The government sought to clarify that it had acquiesced to

6    the first motion only insofar as the motion sought the suppression of wire communications, not

7    electronic communications. Richardson's counsel objected that, in effect, the government

8    forfeited or waived this argument in the withdrawal of its opposition to the first motion.

9    Richardson's counsel requested the court "stand by its ruling" that it would grant the motion.

10   Having now reviewed the moving papers on the first motion, the court finds the government did

11   not waive its argument respecting electronic communications.

12           With the first motion, Richardson seeks suppression of "all fruits" from all 32

13   wiretaps, without limitation. First Mot. at 1, 2, 11. Although the government did not raise the

14   electronic/wire distinction in response to the first motion,[3] it did in opposition to the second

15   motion. Second Opp'n at 8–13. Richardson replied substantively to the electronic/wire

16   distinction argument in his moving papers on the second motion. Second Reply at 2–3;

17   Richardson Suppl. Br. at 7–8. It is clear from the briefing that although the government conceded

18   the basis of the first motion, whether granting the motion would require the suppression of

19   electronic evidence was a matter of dispute for the court to resolve. *See, e.g., Norwood v. Vance*,

20   591 F.3d 1062, 1068 (9th Cir. 2010) (addressing purportedly waived claim because opposing

21   party responded to merits of claim without also making waiver argument).

22           The court now GRANTS in part and DENIES in part the first motion to suppress

23   (ECF No. 84). Wire communications containing Richardson's voice that were recorded as part of

24   the San Joaquin Interceptions are suppressed. Electronic messages such as text messages are not

25   suppressed, as discussed below.

---

[3] The government twice reserved its right to argue several suppression exclusions and that probable cause would survive *Franks* excision in the federal wiretap challenge, but made no mention of the electronic/wire distinction. First Opp'n at 16 n.6; Withdrawal of First Opp'n at 2.

8

2. Co-defendants' Standing

Richardson's co-defendants filed briefing on their standing to join the first motion. *See* Cipriano Suppl. Br.; Snowden-Hall Suppl. Br.; Ross Joinder. At hearing, the government and all joining co-defendants agreed (1) Richardson was recorded on the San Joaquin Interceptions; (2) Cipriano, Snowden-Hall and Ross were not recorded on the San Joaquin Interceptions; and (3) all defendants in this case were recorded on the federal interceptions.

"Any aggrieved person" may move for suppression of "any wire or oral communication intercepted pursuant to this chapter" on the grounds that "the communication was unlawfully intercepted." 18 U.S.C. §§ 2518(10)(a), 2518(10)(a)(i). Standing under this provision is limited to persons whose rights were violated by the interception. *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005) (citing *Alderman v. United States*, 394 U.S. 165, 175–76 n.9 (1969)). Defendants have standing to move for statutory suppression when they are parties to an intercepted transmission, regardless of their possessory interest in the tapped device. *United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973); *see also United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012) (concluding even an individual disavowing his own voice recorded on interception had standing to challenge wiretap of another's phone).

Here, the joining co-defendants have standing only to the extent their voices were captured on the objectionable interceptions, which is to say they have none. Richardson was captured on the San Joaquin Interceptions, but his co-defendants were not. Persons not recorded on a wiretap cannot challenge that wiretap even if information from that wiretap was later used to obtain a wiretap in which they were recorded. *See Brunoehler v. Tarwater*, 743 F. App'x 740, 744 (9th Cir. 2018) (unpublished), *aff'g in relevant part* No. 15-688, 2016 WL 11605070, *5–6 (C.D. Cal. Oct. 5, 2016). The joining co-defendants did not identify any contrary authority at hearing. The district court's and Ninth Circuit's reasoning in *Brunoehler* is sound. The joining co-defendants do not have standing to join the first motion here.

b. Second Motion to Suppress

Richardson argues the suppressed San Joaquin Interceptions taint the federal affidavit that relied on them so thoroughly that, without the San Joaquin Interceptions, the federal

9

1  affidavit could not have supported probable cause to issue the federal wiretap.  Second Mot.  The
2  government argues electronic communications such as text messages are not suppressible under
3  the statutory suppression scheme.  Opp'n.  The court agrees that even if tainted by an illegal
4  underlying application, the Wiretap Act does not permit suppression of the intercepted text
5  messages.
6          Title 18 U.S.C. § 2518(10) allows suppression of "any wire or oral
7  communication" but does not list as suppressible "electronic communications."  18 U.S.C.
8  § 2518(10).  Electronic communications are defined as "any transfer of signs, signals, writing,
9  images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio,
10 electromagnetic, photoelectronic or photooptical system that affects interstate or foreign
11 commerce, but does not include (A) any wire or oral communication . . . ."  18 U.S.C. § 2510(12).
12 Cases addressing text messages characterize them as electronic communications within the
13 meaning of the statute.  *See, e.g., Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1043 (N.D. Cal.
14 2014).  Wire communications are any method of affecting an "aural transfer," in other words
15 audible sound, such as a phone call.  18 U.S.C. § 2510(1).
16         Congress amended the Wiretap Act in 1986 to address electronic communications
17 other than phone calls, by enacting the Electronic Communications Privacy Act (ECPA).  Pub. L.
18 No. 99–508, 100 Stat. 1848.  The legislative history of ECPA's amendment of Title III supports
19 the conclusion that Congress considered extending the statutory suppression remedy to electronic
20 communications, but declined to do so.  "The purpose of [ECPA's amendment to § 2518(10)] is
21 to underscore that, as a result of discussions with the Justice Department, the Electronic
22 Communications Privacy Act does not apply the statutory exclusionary rule contained in [the
23 Wiretap Act] to the interception of electronic communications."  S. Rep. 99-541, at *23, 1986
24 U.S.C.C.A.N. 3555, 3577.  "In the event there is a violation of law of a constitutional magnitude
25 [relating to electronic communications], the court involved in a subsequent trial will apply the
26 existing Constitutional law with respect to the exclusionary rule."  *Id.*  For violations of Title III
27 without a constitutional dimension, there is no statutory suppression remedy for electronic
28 communications.  *United States v. Reed*, 575 F.3d 900, 915 (9th Cir. 2009).

10

At the June 22, 2020 hearing, as noted, the court granted Richardson an opportunity to respond in supplemental briefing to the government's argument that he had waived any argument that the violations of Title III leading to the suppression of the San Joaquin Interceptions had a constitutional dimension. Richardson asserts the oath and authorization requirements are "Title III central safeguards that directly implicate the Fourth Amendment." Richardson Suppl. Br. at 5. However, the case law Richardson cites does not support this assertion. Richardson is correct that the authorization requirements "are a central safeguard of Title III." *Id.* at 6 (citing *People v. Roberts*, 184 Cal. App. 4th 1149, 1185 (2010), in turn citing *Giordano*, 416 U.S. at 527)). However, it does not follow that statutory requirements that "directly and substantially" implement the intent of Congress, *Fowlkes*, 804 F.3d at 969, are necessarily constitutional.

Richardson goes on to argue Title III's requirement that wiretap applications must be signed under oath by the principal prosecutor is effectively co-extensive with the Fourth Amendment's requirement that warrants be "supported by Oath or affirmation." Richardson Suppl. Br. at 6–7. Although he characterizes the state wiretap applications as "unsworn" and therefore in violation of the Fourth Amendment, they are only unsworn in that they are not properly attested to by the principal prosecutor as provided by the state statute. Beyond Title III's obvious concern with the protection of privacy, Richardson does not identify other authority for this argument. He does not identify case law making warrant affidavits sworn by a law enforcement officer, but not the principal prosecutor, a violation of the Fourth Amendment.

Richardson's Fourth Amendment argument is unavailing. San Joaquin County violated the requirements of 18 U.S.C. § 2516(2) and its corresponding state statute, California Penal Code section 629.50. While these statutes are consonant with the privacy interests protected by the Fourth Amendment, this consonance does not constitutionalize them. Therefore, the violation is statutory only, and the only remedies are statutory in nature. As a result, because text messages are "electronic communications" within the meaning of the statute, and because the statute does not permit the suppression of "electronic communications," the text messages are not suppressible.

11

Considering the remainder of the Richardson wiretap affidavit, the court finds it supports probable cause for the federal wiretap to issue once the offending phone calls, but not the text messages, are redacted. The government asserts much of the content of the affidavit includes independent investigative work not reliant on wiretaps. Opp'n at 8–9 (citing ¶¶ 31–57 of the affidavit, which rely on unchallenged common-call analysis, GPS location data and confidential information information). Furthermore, the text messages between Lockett and Richardson in which Richardson states he needs "lacto" and declares his intent to use "mask n gloves" in reply to Lockett's question about a "piss test" are not suppressible.

Lastly, the government asserts Richardson does not have standing to challenge the use of information gleaned from the search of the Mose phone in the wiretap affidavit. Opp'n at 14–15. The affidavit in support of the search warrant for the Mose phone, as opposed to the wiretap, relies in part on the San Joaquin Interceptions. Under the ordinary Fourth Amendment principles applicable to search warrants, persons without a possessory or other legal interest in a given piece of property do not have standing to challenge a search of it. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978).

Richardson does not assert a possessory or legal interest in Joseph Mose's phone. Even assuming, without deciding, that Richardson can challenge the search of the Mose phone under a theory that he is an "aggrieved person" by being captured on the underlying wiretaps of Terrence Lockett under § 2510(11), the only suppressible material would be phone calls to which he is a party. The Mose search warrant affidavit rests substantially on calls between Lockett and his associate Daryl Walters, as well as text message exchanges with Richardson. This leaves ample probable cause to search Mose's phone. Thus, the results of the search of that phone survive redaction of the Richardson wiretap affidavit. Even operating on the assumption that Richardson can challenge the Mose warrant affidavit because he was a party to his calls with Mose, the affidavit still supports probable cause to search the Mose phone. The results of that search—repeated text message exchanges appearing to arrange drug transactions—are not excised from the Richardson federal wiretap warrant.

/////

Overall, even purging the results of the suppressed San Joaquin Interceptions from the federal wiretap affidavits, the affidavits still support probable cause.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Richardson's first motion to suppress, ECF No. 84.  The court DENIES Richardson's second motion to suppress, ECF No. 154.

IT IS SO ORDERED.

DATED:  March 2, 2021.

CHIEF UNITED STATES DISTRICT JUDGE